ELLIS, Judge:
This is a suit by G. W. Coates, doing business as Clayco Construction Company, *759 against Charles Carter & Company, Inc., for a balance of $4,255.74, allegedly due under a subcontract between the parties. After trial on the merits, judgment was rendered in favor of plaintiff for $2,624.84, and defendant has appealed. Plaintiff has answered the appeal, asking that the judgment be increased by $550.00.
Carter was the prime contractor for construction of a building for South Central Bell Telephone Company in Hammond, Louisiana. Carter and Clayco entered into a subcontract on January 12, 1970, under which Clayco was to perform certain clearing, excavation and compaction work. A number of change orders were issued by Carter, none of which were signed by Clayco, although some of the work provided for thereunder was actually performed and paid for.
At the outset of the trial, it was stipulated by Carter that there was a balance of $1,195.05 owing under the contract. It disputed the remainder of plaintiff’s claims. The major dispute is as to how much is due for excavation work carried out.
Dirt was removed from four identifiable areas by plaintiff: the basement excavation; the north slope of the basement excavation; and east slope of the basement excavation; and the parking lot.
The contract calls for a basement excavation of 130 feet by 65.17 feet by 12.42 feet in depth. In order to prevent cave-ins on the north and east sides, it was necessary to remove some material to slope the walls. The testimony of plaintiff’s witnesses is to the effect that 3912 cubic yards of material was removed from the basement proper, 600 yards from the north slope, and 125 yards from the east slope. Defendant’s witnesses testified that 3832 yards, 332 yards and 20 yards respectively were removed from the same areas.
With respect to the parking lot, plaintiff’s witnesses testified that 644.44 yards of material were removed, and defendant admits that 370 yards were removed. However, defendant claims that the removal of material from the parking lot is not covered by the excavation clause of the contract, but by the following clause from one of the change orders:
“Replace fill at original cooling tower and parking area with excavated fill from basement area—dozer compacted 50íá cy.”
Excavation work was to be paid for at $1.10 per cubic yard under the contract. Defendants are claiming that plaintiff agreed, by virtue of the above provision, to excavate the parking lot, fill it and compact the fill for 50?! per cubic yard. We do not so interpret the foregoing. The contract clearly does not contemplate that excavation of the parking lot area be included in that item.
Plaintiff’s witnesses testified to a total of almost 5300 cubic yards of material excavated. However, in this suit, plaintiff is claiming that a total of 4832 yards was removed. Defendant’s witnesses testified to a total of 4164 yards. The trial judge resolved these factual differences in favor of plaintiff and awarded $734.80 for the difference of 668 cubic yards between what plaintiff claimed and what defendant admitted. We find no manifest error in this conclusion.
Plaintiff next claims the sum of $250.00 for removal of underground water pipes and electrical conduit from the site of the water tower which was moved by plaintiff under one of the change orders. It is not disputed that when the change order was issued, neither party was aware that this work would have to be done. Defendant’s supervisor admitted that $250.00 was not an unreasonable charge for the work, but testified that plaintiff agreed to do the job for the salvage value of the material removed. This is denied by plaintiff. The trial judge resolved this factual dispute in favor of plaintiff, and we find no manifest error in his conclusion.
*760 The third item in dispute is the sum of $444.99 for truck rental and labor involved in keeping the street adjacent to the job site clean. It is plaintiff’s position that he was forced to work under adverse conditions, when the job site was extremely wet and muddy, and, as a result his trucks tracked an inordinate amount of mud into the street, which he had to remove. The matter is not specifically covered by the contract. Defendant claims that such clean-up operations are a natural and probable consequence of the work required under the contract. Plaintiff claims that defendant made the contract more burdensome by forcing him to work under adverse, muddy conditions. The trjal judge awarded $444.99 to plaintiff for this item, and we once again find no manifest error in his conclusion.
The final matter presented for our consideration is the $550.00 claimed by plaintiff in his answer to the appeal as profits lost through not being permitted to perform one part of the contract. The contract provides that, after the basement walls were completed, plaintiff was to backfill the space between the outside of the walls and the excavation and compact the fill at a price of $1.50 per cubic yard. He was never called on to perform this work by defendant.
It appears from the record that when the excavation of the basement was completed, ground water or seepage caused the bottom of the excavation to flood. The work was halted at that point while it was determined what to do. Mr. Strain, Carter’s superintendent, testified that it was necessary to put in a sump hole, drain tile and filter bed to dry out the hole. He stated that he asked Mr. Coates of Clayco to come to do the excavation and that Mr. Coates refused to do so and said “you dry that hole up and give me twenty-four hours notice and I will move all my equipment back in there and work one day and carry that hole to grade.” Mr. Strain admitted that the excavation was too wet to work in at that time, but he felt that Mr. Coates could have put some equipment on the ramp leading into the hole to remove some loose dirt on the bottom thereof. He testified that the work to correct the flooding in the excavation was no part of Clayco’s contract.
Mr. Strain further testified that after Clayco refused to come back to the job on the above occasion that it never occurred to him that Clayco would be interested in putting in the backfill. He testified that his failure to call Clayco back was an oversight on his part.
We can find no breach of the contract by Clayco under the above circumstances. We find that Carter breached the contract by failing to call Clayco to do the backfill and compaction work called for under the contract. Mr. Coates testified that he estimated 1100 yards of material would have been required, and that he expected to net about 50^ per cubic yard on that part of the job. There is no testimony to the contrary in the record. We therefore find that plaintiff was damaged to the extent of $550.00 by defendant’s breach of the contract between them, and is entitled to additional recovery in that amount.
The judgment appealed from is therefore amended by increasing the total amount thereof by $550.00, and as amended, it is affirmed, at defendant’s cost.
Amended and affirmed.